IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| LEXINGTON INSURANCE COMPANY, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:23-cv-0016 |
| | § | |
| BAYLOR UNIVERSITY, | § | |
|     Defendant. | § | |

### ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT

TO THE HONORABLE UNITED STATES DISTIRCT COURT:

Lexington Insurance Company ("Lexington") brings this suit for declaratory judgment pursuant to the Declaratory Judgments Act, 28 U.S.C. Section 2201, and Federal Rule of Civil Procedure 57 relating to its rights and obligations under several commercial general liability policies and commercial umbrella policies issued to Baylor University ("Baylor").

## I.
### PARTIES

1.      Plaintiff Lexington is a Delaware corporation with its principal place of business in Boston, Massachusetts.

2.      Defendant Baylor University is an educational institution located in Waco, McClennan County, Texas.  Baylor University may be served through its President, Linda A. Livingstone, at Pat Neff Hall, Suite 100, Waco, Texas, 76798, or wherever they may be found.

## II.
### JURISDICTION AND VENUE

3.      The amount in controversy is in excess of $75,000, exclusive of interest and costs. The parties to this lawsuit are of different states.  Therefore, this Court has jurisdiction over the lawsuit under 28 U.S.C. Section 1332.  Venue is proper in the Western District of Texas, Waco Division pursuant to 28 U.S.C. Section 1391(a)(2) because a substantial part of the events giving

rise to the claim occurred in Waco, McClennan County, Texas, which is contained within this District and Division.

### III.
### SUMMARY

4.     This is a declaratory judgment action in which Lexington seeks a declaration regarding its coverage obligations to Baylor for the claims asserted against Baylor by Jane Does 1 to 15 currently pending in the lawsuit styled *Jane Doe 1, et al. v. Baylor University*, No. 6:16-CV-173-RP in the Western District of Texas, Waco Division, which has been consolidated with *Jane Doe 11 v. Baylor University*, No. 6:17-CV-228-RP and *Jane Doe 12, et al. v. Baylor University*, No. 6:17-CV-236-RP (collectively, the "Underlying Suit").

5.     In the Underlying Suit, the plaintiffs asserted causes of action related to alleged sexual assaults including violations of Title IX, 20 U.S.C. Section 1681, of the Education Amendments of 1972 ("Title IX"), common law negligence under Texas state law, and breach of contract under Texas state law. Based upon the initially asserted causes of action, Lexington agreed to provide Baylor with a defense in the Underlying Suit pursuant to a reservation of rights under the insurance policies identified below.  Lexington continues to provide such defense as of the date of this Complaint.  Throughout the course of the litigation, however, the trial court in the Underlying Suit has dismissed each of the plaintiffs' Texas state law claims for negligence and breach of contract. Accordingly, the remaining causes of action are for Title IX claims. Due to the fact that only Title IX claims remain pending and in light of recent clarifications from the Fifth Circuit on liability under Title IX, Lexington brings the instant declaratory judgment action.

6.     Lexington is entitled to a declaration that it has no duty to defend Baylor and that no coverage exists under the commercial general liability and umbrella policies issued to Baylor by Lexington (the "Lexington Policies") because no "occurrence" is alleged for any of the Title

IX claims currently asserted by the Jane Does 1-15 in the Underlying Suit. Further, Lexington is entitled to a declaration that the sexual abuse exclusion precludes coverage for the claims asserted against Baylor for injuries first occurring between July 1, 2012 and July 1, 2016, namely the claims of Jane Does 1, 3, 4, 8, 9, 10, 12, 14 and 15. Finally, Lexington is entitled to a declaration that no coverage is available for claims asserted against Baylor for injuries first occurring outside the policy periods of the Lexington Policies, namely the claims of Jane Does 2, 5, 6 and 11. For these reasons, Lexington seeks a declaration from the Court that it owes no duty to defend or indemnify Baylor in the Underlying Suit.

## IV.
### BACKGROUND

### A.    Pre-Dismissal Underlying Allegations

7.    The underlying events of this coverage litigation took place on or around the campus of Baylor University and started on or about Fall 2004. Jane Does 1-15 allege generally that they were sexually assaulted by male students at Baylor University. Jane Does 1-15 further allege that Baylor was deliberately indifferent to reports of sexual assault committed against Baylor students; Baylor failed to adequately protect Jane Does 1-15; Baylor's policies and practices created a heightened risk of sexual assault; and, as a result, Baylor violated Title IX and state law. The specific facts regarding each of the Jane Does' claims is summarized below.

8.    Jane Doe 1 was allegedly sexually assaulted on April 26, 2014, by a member of the Baylor football team. Exhibit A, ¶¶54-55. She allegedly reported the assault to a Baylor physician who Jane Doe 1 claims "mis-informed [her] and concealed from Jane Doe 1 as to her options to further report the incident, accommodations she was entitled to under Title IX, and further investigatory actions that could be taken by the University." Exhibit A, ¶¶57-58. As a result of her alleged sexual assault and the alleged failed grievance mechanism, Jane Doe 1 "struggled in her

course work due to the heavy anxiety and depression she faced." Exhibit A, ¶¶61. Jane Doe 1 alleges that she performed poorly in many classes and her scholarships were taken away. Exhibit A, ¶¶65, 67.  Jane Doe 1 alleges that she suffered "abuse" as well as "heavy anxiety and depression" following her alleged sexual assault. Exhibit A, ¶¶61-62.

9.       Jane Doe 2 was allegedly sexually assaulted on September 4, 2004, as a minor. Exhibit A, ¶¶73, 75. She alleges that after reporting the assault to the Chaplain of her Baylor dormitory, the Baylor Police Department "effectively discourage[d] Jane Doe 2 from naming" her assailant, and no support was provided to her by the University. Exhibit A, ¶¶80, 84. Jane Doe 2 took the advice of the Dean and was allegedly suspended from Baylor causing her to lose her scholarships and financial aid, moved out of state in May 2008, and then returned to Baylor in the fall of 2015, where she was suspended again. Exhibit A, ¶¶91-92, 99. Jane Doe 2 alleges that she has suffered "severe physical and mental health impairments for over a decade" due to Baylor University's actions and inactions. Exhibit A, ¶103.

10.       Jane Doe 3 alleges that she was sexually harassed and assaulted by a fellow staff member in the Baylor dormitories beginning in the fall of 2013 and continuing through December 2015. Exhibit A, ¶107. Jane Doe 3 alleges that she was forced to resign from her position as an office assistant at the dormitory because working in the location of the assault was distressing. Exhibit A, ¶109. Jane Doe 3 alleges that her grades suffered after the alleged sexual assault and an investigation into the alleged assault by the Baylor Police Department remains open. Exhibit A, ¶¶115, 118. Jane Doe 3 alleges that Baylor's conduct following her sexual assault "has severely impaired her physical and mental health and well-being."  Exhibit A, ¶120.

11.       Jane Doe 4 alleges that she was sexually assaulted on April 7, 2014, by a fellow Baylor student. Jane Doe 4 alleges that Baylor Title IX office was no assistance to her. Jane Doe

4 alleges that following her sexual assault, she was hospitalized for a panic attack, hospitalized for abusing Adderall, and Baylor's conduct following her sexual assault "has severely impaired her physical and mental health and well-being."

12.     Jane Doe 5 alleges that she was sexually assaulted by a male Baylor student in his dormitory room in mid-November 2005. Exhibit A, ¶152. Jane Doe 5 alleges that she reported the sexual assault to a physician at the Baylor medical clinic and to the Baylor Counseling Center. Exhibit A, ¶¶155, 159. Jane Doe 5 alleges that Baylor's conduct following her sexual assault "has severely impaired her physical and mental health and well-being." Exhibit A, ¶175.

13.     Jane Doe 6 alleges that she was sexually assaulted by a senior Baylor student after being served a drink that had been drugged during her junior year after enrolling in the fall of 2005. Exhibit A, ¶¶176, 178. She alleges that she reported the incident to the Baylor police who refused to take a report. Exhibit A, ¶184. She also claims that she was never informed of any accommodations that could be made. Exhibit A, ¶185. Jane Doe 6 alleges that she suffered "forcible sexual intercourse" and that Baylor's conduct following her sexual assault "has severely impaired her physical and mental health and well-being." Exhibit A, ¶¶183, 187. Jane Doe 6 alleges that Baylor "actively prevented [her] from pursuing her rights under Title IX." Exhibit A, ¶190.

14.     Jane Doe 7 alleges that she was sexually assaulted by two Baylor students in May of 2009 and thereafter encountered the two alleged assailants on a daily basis for two years. Exhibit A, ¶¶192, 204. Jane Doe 7 alleges that she suffered "forcible sexual intercourse," and subsequently became depressed, experienced suicidal thoughts and developed anxiety, and further alleges that Baylor's conduct following her sexual assault "substantially impaired [her] physical and mental health." Exhibit A, ¶¶195, 209.

15.     Jane Doe 8 alleges that she was sexually assaulted by a Baylor student in March 2015. Exhibit A, ¶211. Jane Doe 8 alleges that the Baylor Police Department discouraged her from pursuing her claims further and the Baylor Title IX office discouraged her from requesting a traditional Title IX hearing. Exhibit A, ¶¶226, 229. Jane Doe 8 alleges that Baylor's conduct following her sexual assault caused her to suffer "severe physical and mental health impairments." Exhibit A, ¶231.

16.     Jane Doe 9 alleges that she was sexually assaulted by a Baylor student in November 2014. Exhibit A, ¶235. Jane Doe 9 alleges that the Baylor Title IX office has not provided any assistance to her. Exhibit A, ¶247. Jane Doe 9 also alleges that she suffers panic attacks and that Baylor's conduct following the sexual assault has caused her to suffer "severe physical and mental health impairments." Exhibit A, ¶¶239, 245 and 249.

17.     Jane Doe 10 alleges that she was sexually assaulted by an assailant in February 2016. Exhibit A, ¶254. Jane Doe 10 alleges that Baylor's Title IX office conducted an investigation but failed to support her through its process and failed to take sufficient action to provide her with a fair, impartial, and informal investigation. Exhibit A, ¶¶258-59. Jane Doe 10 alleges that Baylor's conduct following the sexual assault "severely impaired her physical and mental health and well-being." Exhibit A, ¶261.

18.     Jane Doe 11 alleges that she was sexually assaulted in April 2017 by a Baylor student. Exhibit B, ¶51. Jane Doe 11 claims that her subsequent interactions with the Title IX office "devolved into insinuations and questions geared at blaming Jane Doe 11 for the assault." Exhibit B, ¶55. Baylor University allegedly told Jane Doe 11 that they found her assailant "not responsible" for the assault, and when she attempted to appeal, she was ignored until the appeal deadline and then denied an extension. Exhibit B, ¶¶69, 71. She alleges that she was misinformed

as to her options by the Title IX office and the University Police, leaving the underlying action as her only means of redress. Exhibit B, ¶¶71-72, 80.

19.     Jane Doe 12 alleges that she was sexually assaulted in March 2016. Exhibit C, ¶50. Jane Doe 12 alleges that after her professor contacted Baylor's Title IX office, the office "misinformed [her] and dissuaded her from reporting to the police." Exhibit C, ¶55. Jane Doe 12 also alleges that Baylor's conduct and handling of her case caused her to lose her academic scholarship and "substantially impaired Jane Doe 12's higher education experience and has severely impaired her physical and mental health and well-being." Exhibit C, ¶76.

20.     Jane Doe 13 alleges that she was sexually assaulted in April 2012 by a Baylor student. Exhibit C, ¶¶78-79. She alleges that the University placed her in group counseling sessions that frequently discussed retaliation against reporters of sexual assault, causing her to fear further reporting of her assault. Exhibit C, ¶82. Jane Doe 13 further claims that she was assaulted again in the fall of 2012 by a Baylor student and member of the Baylor Rugby team. Exhibit C, ¶¶85-86. After reporting this alleged assault to the University's counseling center, she claims that she was "manipulated into not pursuing her rights." Exhibit C, ¶87. Despite reporting this assault, Jane Doe 13 alleges that her second assailant was allowed to attend the same study abroad program as her, hosted by Baylor University, where the assailant assaulted her for a second time. Exhibit C, ¶96. At the time of Jane Doe 13's alleged assaults, there was no Title IX coordinator to report to. Exhibit C, ¶100. Jane Doe 13 further alleges that Baylor's "failure to respond to sexual assaults fostered the environment that led to Jane Doe 13's assaults" and as a result of Baylor University's actions and/or inactions, she has suffered "severe physical and mental health impairments that continue today." Exhibit C, ¶101.

21.     Jane Doe 14 alleges that in April 2016 she was sexually assaulted in student housing owned by Baylor by two Baylor students who were members of the Baylor football team. Exhibit C, ¶¶106-109. She alleges that she was "misled as to her options to further report the incident" and manipulated into not pursuing her rights. Exhibit C, ¶112. Jane Doe 14 further claims that after the assault, Baylor University informed her that she would be required to withdraw and go to another university before being allowed to continue her studies at Baylor and subsequently placed a hold on her account when she attempted to re-enroll at Baylor. Exhibit C, ¶¶117-124. The basis for the hold was text messages allegedly sent by Jane Doe 14 to a Baylor student while Jane Doe 14 attended a different university that were "in opposition to the Christian ideals [Baylor] strives to uphold." Exhibit C, ¶¶124, 128. Jane Doe 14 was allowed to re-enroll but was charged with misconduct. Exhibit C, ¶130. She claims that Baylor's actions after her alleged assault constitute retaliation and have caused her to "continue[s] to struggle mentally and physically." Exhibit C, ¶132.

22.     Jane Doe 15 alleges that she was sexually assaulted by a Baylor student in February 2016. Exhibit C, ¶136. Jane Doe 15 reported the assault, and a professor notified the Title IX office, who assured her that she would be provided with academic accommodations, counseling, relocation, and a protective order. Exhibit C, ¶¶139-142.  Jane Doe 15 alleges that the "plans of action to assist [her] quickly dissolved and by Fall of 2016, [she] was left to navigate" on her own. Exhibit C, ¶¶146-147. She alleges that she was assured that if her assailant returned to campus, he would be arrested, but discovered on her own that he had, in fact, returned to campus, and that the University was aware but did nothing to protect her. Exhibit C, ¶¶148-150, 153. Jane Doe 15 further alleges that the University's Title IX office "acknowledged her rape but ignored the impact on her mental health," causing her "great mental distress that interferes with her daily routine."

Exhibit C, ¶¶169-170. She alleges that the sexual assault and Baylor's subsequent failure to respond appropriately has substantially impaired her physical and mental health and well-being. Exhibit C, ¶172.

### B.    Procedural History

23.    As a result of these alleged sexual assaults and Baylor's alleged responses and/or lack thereof, Jane Does 1-3 first filed suit on June 15, 2016[1] for violations of Title IX, common law negligence under Texas state law, and breach of contract under Texas state law, for which they seek relief in the form of actual damages, compensatory damages, nominal damages, punitive damages, court and litigation costs, expert fees, attorneys' fees, and injunctive relief under Title IX. Plaintiffs filed a third amended complaint against Baylor on October 28, 2016 adding Jane Does 4-10. Shortly thereafter, Jane Doe 11[2] and Jane Does 12-15[3] filed separate suits against Baylor on August 21, 2017, and September 1, 2017, respectively, for identical causes of action, namely violations of Title IX, common law negligence under Texas law, breach of contract under Texas law, as well as relief in the form of actual damages, compensatory damages, nominal damages, punitive damages, court and litigation costs, expert fees, attorneys' fees, and injunctive relief under Title IX.

24.    Baylor filed a Motion to Dismiss under Rule 12(b)(6) in each lawsuit, asserting, in sum, that the plaintiffs had failed to allege sufficient facts to maintain any of the alleged causes of

---

[1]    On June 15, 2016, Jane Does 1-3 filed their Original Complaint and Jury Demand with the Western District of Texas, Waco Division, styled *Jane Doe 1, et al. v. Baylor University*, No. 6:16-CV-173 (W.D. Tex. Jun. 15, 2016). An amended complaint was filed on June 28, 2016, adding Jane Does 4-6 as plaintiffs. The Third Amended Complaint filed on October 28, 2016 was amended to add Jane Does 7-10 as plaintiffs. For ease of discussion, we have simplified the dates.

[2]    *Jane Doe 11 v. Baylor University*, No. 6:17-CV-228-RP (W.D. Tex. Aug. 21, 2017).

[3]    *Jane Doe 12, et al. v. Baylor University*, No. 6:17-CV-236 (W.D. Tex. Sept. 1, 2017). A First Amended Complaint was filed on February 28, 2018 adding Jane Doe 15 as a plaintiff.

action. On March 7, 2017, the underlying district court issued an Order upon Baylor's Motion to Dismiss in the lawsuit initially asserted by Jane Does 1-10. In its Order, the district court fully dismissed the state law claim of negligence because Jane Does 1-10 failed to state a claim that Baylor breached any legal duty it had towards any of them. The district court also fully dismissed the state law claim for breach of contract because Jane Does 1-10 failed to state a claim as they failed to identify the existence of an enforceable contract. The Court upheld the Title IX claims, finding that they were adequately alleged.

25.     On December 28, 2018, the court granted Baylor's motion to dismiss the claims asserted by Jane Doe 11 under an identical basis as the Order issued in the Jane Does 1-10 suit. The court dismissed Jane Doe 11's state law claims for negligence and breach of contract and maintained her claims for violation of Title IX.

26.     On September 29, 2018, the Court ruled on Baylor's motion to dismiss all claims as to Jane Does 12-15. Once again, the court dismissed plaintiffs' state law claims for breach of contract and negligence as to all four plaintiffs and maintained the Title IX claims.[4]

27.     On February 6, 2019, the three lawsuits were consolidated into *Jane Doe 1, et al. v. Baylor University*, No. 6:16-CV-173 currently pending in the Western District of Texas, Waco Division, for all discovery and pre-trial proceedings with *Jane Does 1-10* as the leading case. Almost a year later, on January 28, 2020, Baylor filed a motion in the consolidated suit to dismiss all plaintiffs' requests for injunctive relief and punitive damages under Title IX. On April 1, 2020, the underlying district court granted Baylor's motion to dismiss all plaintiffs' requests for general injunctive relief and for punitive damages under Title IX. The court, however, maintained

---

[4]     The court distinguished between two types of Title IX claims referring to them as "post-reporting" and "heightened-risk" claims respectively.  The court found that each of plaintiffs 12 - 15 had adequately alleged "heightened risk" claims but that only plaintiffs 12, 14 and 15 had adequately alleged a "post-reporting" claim.

plaintiffs' claims for actual damages, compensatory damages, nominal damages, court and litigation costs, expert fees, attorney fees, statutory interest, and specific injunctive relief under Title IX.

28.     Because the trial court has dismissed plaintiffs' state law claims for negligence and breach of contract, no state law claims remain pending and the only active causes of action are under Title IX.

C.     **The Lexington Primary Insurance Policies**

29.     Lexington issued to Baylor the following commercial general liability policies (collectively the "Lexington Primary Policies"):

- 06764093, effective July 1, 2007 to July 1, 2008 (the "2007-08 Primary Policy");

- 02990233, effective July 1, 2008 to July 1, 2009 (the "2008-09 Primary Policy");

- 021435726, effective July 1, 2009 to July 1, 2010 (the "2009-10 Primary Policy");

- 031428153, effective July 1, 2010 to July 1, 2011 (the "2010-11 Primary Policy");

- 031428153, effective July 1, 2011 to July 1, 2012 (the "2011-12 Primary Policy");

- 031428153, effective July 1, 2012 to July 1, 2013 (the "2012-13 Primary Policy");

- 031428277, effective July 1, 2013 to July 1, 2014 (the "2013-14 Primary Policy");

- 031428277, effective July 1, 2014 to July 1, 2015 (the "2014-15 Primary Policy"); and

- 031428277, effective July 1, 2015 to July 1, 2016 (the "2015-16 Primary Policy").

30.     The Lexington Primary Policies' Insuring Agreement for Bodily Injury and Property Damage Liability Coverage provides in relevant part:[5]

**SECTION I COVERAGES**

---

[5]     The 2007-16 Primary Policies' Insuring Agreements for Bodily Injury and Property Damage Liability are substantively identical.  For the sake of brevity, Lexington cites only policy number 031428153, effective July 1, 2012, to July 1, 2013.

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.  **Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages because of "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1)  The amount we will pay for damages is limited as described in SECTION **III** – LIMITS OF INSURANCE; and

        (2)  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A, B** or **C**.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS COVERAGES **A, B** AND **C**.

    b.  This insurance applies to "bodily injury" and "property damage" only if:

        (1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2)  The "bodily injury" or "property damage" occurs during the policy period; and

                            * * *

**SECTION IV DEFINITIONS**

    1.  "Bodily injury" means bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or mental injury resulting from "bodily injury".

                            * * *

    16.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

        In the event of continuous or progressively deteriorating damage over any length of time, such damage shall be deemed to be one "occurrence", and shall be deemed to occur only when such damage first commences.

                            * * *

31.  The 2012-2016 Primary Policies include the following exclusion:

        The following exclusion is added to the policy and is applicable to "bodily injury" and "property damage" under **COVERAGE A. BODILY INJURY AND PROPERTY**

DAMAGE LIABILITY; "personal and advertising injury" under **COVERAGE B. PERSONAL AND ADVERTISING INJURY**; and "incidental medical malpractice injury" under **COVERAGE C. LIMITED INCIDENTAL MEDICAL MALPRACTICE LIABILITY COVERAGE**:

> This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury", or "incidental medical malpractice injury" caused by, arising out of, or resulting directly or indirectly, in whole or in part from sexual abuse or molestation, including but not limited to, the following:

> **1.** actual or threatened sexual abuse or molestation of any person, committed by or alleged against any person, including, but not limited to, any insured, any employee of such insured, a leased or temporary worker working for such insured, a patron of such insured, or any other person;

> **2.** actual or threatened sexual abuse or molestation of any person, committed by or alleged against any independent contractor under contract with the Named Insured regardless of any duty to defend and/or indemnify such independent contractor contained in such contract and notwithstanding whether the Named Insured would be liable in the absence of such contract; or

> **3.** any act or failure to act to suppress or prevent actual or threatened sexual abuse or molestation of any person, by any person in Paragraph **1.** or **2.** above

> and regardless of the theory of liability or cause of action alleged in the complaint or claim against the insured, including, but not limited to, vicarious liability, negligent employment, negligent investigation, negligent instruction, negligent supervision, negligent reporting to the proper authorities, or failure to so report, negligent retention, negligent hiring, negligent placement, and/or negligent training.

> All other terms and conditions of the policy remain the same.[6]

32.    Baylor tendered the claims of Jane Does 1-15 to Lexington for a defense when each was made. Lexington has defended Baylor under a full reservation of rights for the claims of Jane Does 1-15 for the pendency of the Underlying Suit.

**D.    The Lexington Umbrella Insurance Policies**

33.    Lexington issued to Baylor the following commercial umbrella policies (collectively the "Lexington Umbrella Policies"):

- 06764094, effective July 1, 2007 to July 1, 2008 (the "2007-08 Umbrella Policy");

---

[6]    Added to the 2012-16 Primary Policies by the Sexual Misconduct Liability Coverage endorsement.

- 03044554, effective July 1, 2008 to July 1, 2009 (the "2008-09 Umbrella Policy");

- 021404544, effective July 1, 2009 to July 1, 2010 (the "2009-10 Umbrella Policy");

- 023815618, effective July 1, 2010 to July 1, 2011 (the "2010-11 Umbrella Policy");

- 023815618, effective July 1, 2011 to July 1, 2012 (the "2011-12 Umbrella Policy");

- 023815618, effective July 1, 2012 to July 1, 2013 (the "2012-13 Umbrella Policy");

- 023815813, effective July 1, 2013 to July 1, 2014 (the "2013-14 Umbrella Policy");

- 023815813, effective July 1, 2014 to July 1, 2015 (the "2014-15 Umbrella Policy"); and

- 023815813, effective July 1, 2015 to July 1, 2016 (the "2015-16 Umbrella Policy").

34.    The Lexington Umbrella Policies provide the following Insuring Agreement in relevant part:[7]

**SECTION I – INSURING AGREEMENT – COMMERCIAL UMBRELLA LIABILITY**

**A.**    We will pay on behalf of the "Insured" those sums in excess of the "Retained Amount" that the "Insured" becomes legally obligated to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies. The amount we will pay is limited as described in SECTION IV – LIMITS OF INSURANCE.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SECTION II – DEFENSE AND SUPPLEMENTARY PAYMENTS.

**B.**    This policy applies, only if:

**1.**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

**2.**    The "bodily injury" or "property damage" occurs during the policy period

* * *

**SECTION V – DEFINITIONS**

* * *

---

[7]    The Insuring Agreements of the 2007-16 Umbrella Policies are substantively identical. For the sake of brevity, Lexington cites only policy number 023815618, effective July 1, 2012, to July 1, 2013.

**C.**     "Bodily injury" means bodily injury, disability, sickness, or disease sustained by a person, including death resulting from any of these at any time.  "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

* * *

**P.**     "Occurrence" means:

1.     As respects "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions.  All such exposure to substantially the same general harmful conditions will be deemed to arise out of one "occurrence".

In the event of continuing or progressively deteriorating damage over any length of time, such damage shall be deemed to be one "occurrence", and shall be deemed to occur only when such damage first commences.

2.     As respects "personal and advertising injury", an offense arising out of your business that causes "personal and advertising injury".  All damages that arise from the same, related or repeated injurious material or act will be deemed to arise out of one "occurrence", regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

* * *

35.     The 2012-16 Lexington Umbrella Policies include the following exclusion:

**SECTION III – EXCLUSIONS**

This insurance does not apply to:

* * *

**V.**     Exclusion **AA.** is added to **SECTION III – EXCLUSIONS** as follows: (This exclusion does not apply to coverage provided by Paragraph **G., Sexual Misconduct Liability Coverage of SECTION I – INSURING AGREEMENT**.)

**AA.     Sexual Abuse or Molestation**

"Bodily injury", "property damage", or "personal and advertising injury" caused by, arising out of, or resulting directly or indirectly, in whole or in part from sexual abuse or molestation, including but not limited to, the following:

1.     actual or threatened sexual abuse or molestation of any person, committed by or alleged against any person, including, but not limited to, any "Insured", any employee of such "Insured", a leased or temporary worker working for such "Insured", a patron of such "Insured", or any other person;

2.      actual or threatened sexual abuse or molestation of any person, committed by or alleged against any independent contractor under contract with the "Named Insured" regardless of any duty to defend and/or indemnify such independent contractor contained in such contract and notwithstanding whether the "Named Insured" would be liable in the absence of such contract; or

3.      any act or failure to act to suppress or prevent actual or threatened sexual abuse or molestation of any person, by any person in Paragraph **1.** or **2.** above, and regardless of the theory of liability or cause of action alleged in the complaint or claim against the "Insured", including, but not limited to, vicarious liability, negligent employment, negligent investigation, negligent instruction, negligent supervision, negligent reporting to the proper authorities, or failure to so report, negligent retention, negligent hiring, negligent placement, and/or negligent training.[8]

## V.
## CLAIM FOR DECLARATORY RELIEF

36.     First, Lexington is entitled to a declaration that the Lexington Policies do not provide coverage to Baylor for the claims of Jane Does 1-15 in the Underlying Suit because they fail to allege an "occurrence" pursuant to the definition contained in the Lexington Policies.

37.     Next, Lexington is entitled to a declaration that the Lexington Policies do not provide coverage for the claims of Jane Does 1, 3, 4, 8, 9, 10, 12, 14 and 15 in the Underlying Suit because their claims only allege "bodily injury" arising out of sexual abuse or molestation that is precluded by the sexual abuse and molestation exclusions contained in the 2012-16 Primary and Umbrella Policies.

38.     Finally, Lexington is entitled to a declaration that the Lexington Policies do not provide coverage to Jane Does 2, 5, 6 and 11 because their claims all allege "bodily injury" due to events happening outside of the policy periods of the Lexington Policies.

---

[8]     Added to the 2012-16 Umbrella Policies by the Follow Form Sexual Misconduct Liability Coverage Endorsement.

39.     Accordingly, Lexington respectfully requests a declaration that it owes no duty to defend or indemnify Baylor for any claims in the Underlying Suit under either the Primary Policies or the Umbrella Policies.

## COUNT I

**The Baylor Claims Fail to Assert an "Occurrence" Under the Policies**

40.     Lexington re-alleges and incorporates by reference the allegations contained above in Paragraphs 1-39.

41.     Lexington seeks a declaration that it owes no duty to defend or indemnify Baylor for the claims asserted in the Underlying Suit because the claims do not allege the existence of an "occurrence" as defined by the Lexington Primary and Lexington Umbrella Policies.

42.     Each of the insuring agreements to the Lexington Primary Policies and Lexington Umbrella Policies only provide coverage for any "property damage" or "bodily injury" that is caused by an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

43.     In the Underlying Suit, the court dismissed each of the state law claims alleged by each of Jane Does 1-15 and the only active remaining claims of Jane Does 1-15 allege violations of Title IX.

44.     Title IX violations of the kind alleged by Jane Does 1-15 require proof of deliberate indifference or intentional sex discrimination on the part of Baylor. As clarified by the Fifth Circuit, a Title IX sex discrimination claim against a school requires intent such that deliberate indifference is a form of intent and not an accident. *See Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 358 (5th Cir. 2020) (clarifying that, under Title IX, "schools are liable only for *intentional* sex discrimination") (emphasis in original).

45.     As a result, there are no claims remaining against Baylor in the Underlying Suit that allege the existence of an accident or "occurrence," which is a requisite element of coverage under both the Lexington Primary and Lexington Umbrella Policies.   Accordingly, Lexington seeks a declaration that it owes no duty to defend or indemnify Baylor in the Underlying Suit.

## COUNT II

### The Sexual Misconduct Liability Coverage Endorsements Exclude Coverage for the Alleged Sexual Abuse and Molestation Occurring After July 1, 2012

46.     Lexington re-alleges and incorporates by reference the allegations contained above in Paragraphs 1-45.

47.     The "Sexual Misconduct Liability Coverage" endorsements in the 2012-16 Lexington Primary Policies and the 2012-16 Lexington Umbrella Policies expressly exclude coverage for "bodily injury" that is "caused by, arising out of, or resulting directly or indirectly, in whole or in part from sexual abuse or molestation" that includes "actual or threatened sexual abuse or molestation of any person committed by or alleged against any person."

48.     The Underlying Claims each allege the existence of bodily injury that arises out of sexual abuse or molestation.   Specifically, Jane Does 1-15 have all alleged physical bodily injury that arises out of sexual abuse and molestation by a Baylor student.   In fact, the alleged rapes and/or Baylor's alleged acts or failures to act to prevent those assaults and assist plaintiffs after those assaults are the basis for all claims asserted by Jane Does 1-15.

49.     Jane Doe 1's alleged sexual assault occurred on April 26, 2014; Jane Doe 3's alleged sexual assault began in the fall of 2013 and continued through December 2015; Jane Doe 4's alleged sexual assault occurred on April 7, 2014; Jane Doe 8's alleged sexual assault occurred in March 2015; Jane Doe 9's alleged sexual assault occurred in November 2014; Jane Doe 10's alleged sexual assault occurred in February 2016; Jane Doe 12's alleged sexual assault occurred

in March 2016; Jane Doe 14's alleged sexual assault occurred in April 2016; and Jane Doe 15's alleged sexual assault occurred in February 2016.

50.     All of these alleged sexual assaults occurred within the policy periods of the 2012-16 Lexington Primary and 2012-16 Lexington Umbrella Policies.  All of the claims asserted for "bodily injury" were "caused by, aris[e] out of or result[] directly or indirectly, in whole or in part, from sexual abuse or molestation" of "any person" by "any person."  Thus, as to Jane Does 1, 3, 4, 8, 9, 10, 12, 14 and 15, the clear language of the exclusion contained within the sexual misconduct endorsement precludes coverage for Baylor in the Underlying Suit under both the Lexington Primary Policies as well as the Lexington Umbrella Policies.

COUNT III

**The Alleged Sexual Abuse and Molestation for Certain Claimants
Occurred Outside of the Lexington Policy Periods**

51.     Lexington re-alleges and incorporates by reference the allegations contained above in Paragraphs 1-50.

52.     The Insuring Agreements of each of the Lexington Primary Policies and Lexington Umbrella Policies require that the "bodily injury" occur during the policy period. The Lexington Policies began their policy period on July 1, 2007, and continued by way of renewal until July 1, 2016.

53.     Jane Doe 2's alleged sexual assault occurred on September 4, 2004; Jane Doe 5's alleged sexual assault occurred in mid-November 2005; and Jane Doe 6's alleged sexual assault occurred in the fall of 2005. All of these alleged sexual assaults occurred prior to the inception on July 1, 2007, of the Lexington Primary and Lexington Umbrella Policies.  No "bodily injury" or "property damage" is alleged by Jane Does 2, 5, or 6 to occur in any of the Lexington Policies to

satisfy the insuring agreement to any of those policies.  As a result, there is no coverage for the claims of Jane Does 2, 5, or 6 against Baylor.

54.     Jane Doe 11's alleged sexual assault occurred in April 2017, which occurred after the conclusion on July 1, 2016 of the Lexington Primary and Lexington Umbrella Policies. No "bodily injury" or "property damage" is alleged by Jane Doe 11 to occur in any of the Lexington Policies to satisfy the insuring agreement of any of those policies. As a result, there is no coverage for the claims of Jane Doe 11 against Baylor.

## VI.
### PRAYER

WHEREFORE, plaintiff Lexington Insurance Company, prays that defendant be cited to appear herein and that the Court enter declarations that:

(1)     Lexington owes no duty to defend Baylor University in the underlying claims, Cause No. 6:16-CV-173-RP, in the United States District Court for the Western District of Texas, Waco Division; Cause No. 6:17-CV-228-RP, in the United States District Court for the Western District of Texas, Waco Division; and Cause No. 6:17-CV-236-RP, in the United States District Court for the Western District of Texas, Waco Division; and

(2)     Lexington owes no duty to indemnify Baylor University in the underlying claims, Cause No. 6:16-CV-173-RP, in the United States District Court for the Western District of Texas, Waco Division; Cause No. 6:17-CV-228-RP, in the United States District Court for the Western District of Texas, Waco Division; and Cause No. 6:17-CV-236-RP, in the United States District Court for the Western District of Texas, Waco Division; and

(3)     for such other and further relief to which Lexington may be justly entitled.

Respectfully submitted,

Ellen Van Meir
State Bar No. 00794164
evanmeir@nicolaidesllp.com
Nicholas K. Low
State Bar No. 24089050
nlow@nicolaidesllp.com

NICOLAIDES FINK THORPE
        MICHAELIDES SULLIVAN, LLP
2501 North Harwood Street, Suite 1210
Dallas, TX 75201
469.290.9045
469.290.9041 – FAX

**COUNSEL FOR PLAINTIFF**
**LEXINGTON INSURANCE COMPANYT**